# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6491 | **DATE** | 4/8/2004 |
| **CASE TITLE** | Biomet, Inc. vs. Stryker Howmedica Osteonics Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Stryker Howmedica's motion to transfer (R. 8-2) is granted. This case is hereby transferred to the District of New Jersey. Defendant's motion to dismiss (R. 8-1) is transferred with the case to the District of New Jersey. Status Hearing set for 4/22/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR - 9 2004 | |
| | Notified counsel by telephone. | | date docketed | 16 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH✓ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BIOMET, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 03 C 6491 |
| STRYKER HOWMEDICA OSTEONICS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

APR - 9 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Plaintiff Biomet, Inc. ("Biomet") filed an eight-count complaint against Defendant Stryker Howmedica Osteonics Corporation ("Stryker"), alleging unlawful monopolization under Section 2 of the Sherman Act (Count I), attempt to monopolize under Section 2 of the Sherman Act (Count 2), violation of the Lanham Act (Count 3), tortious interference with contract (Count 4), tortious interference with prospective business relations (Count 5), trade libel (Count 6), commercial disparagement (Count 7), and violation of the Uniform Deceptive Trade Practices Act (Count 8). Jurisdiction is predicated upon both the action arising under a federal question pursuant to 28 U.S.C. 1331, as well as the diversity of citizenship of the parties, pursuant to 28 U.S.C. 1332. Stryker has moved this Court to transfer the action to the District of New Jersey pursuant to 28 U.S.C. 1404(a), as well as to dismiss the Sherman Act claims of Biomet, pursuant to Rule 12(b)(6) for failure to state a claim. For the reasons set forth below, Stryker's motion to transfer is granted, and, accordingly, the Court declines to rule on the motion to dismiss.



## FACTUAL BACKGROUND

Biomet, an Indiana corporation with its principal place of business in Warsaw, Indiana, and Stryker, a New Jersey corporation with its principal place of business in Allendale, New Jersey, are direct competitors in the medical supply business. (R.1-1, Complaint, at ¶¶ 1-2, 5-6.) Both companies maintain corporate offices in New Jersey, while neither maintains an office in Chicago. (R.13-1, Def. Reply Br. In Supp. of Mot. to Dismiss & Transfer, at 6.) Biomet and Stryker both develop, manufacture, market, and distribute products, such as joint implants, trauma products, surgical instruments, and bone cement, which are used primarily by orthopedic specialists. (R.1-1, Complaint, at ¶¶ 5-6.) Both companies sell their products nationwide, through networks of authorized sales representatives. (*Id.*)

According to Biomet's Complaint, sales representatives from Biomet and Stryker maintain close relationships with the physicians, surgeons, and healthcare practitioners to whom they sell their orthopedic products. (*Id.* at 9.) Healthcare professionals rely on sales representatives to provide technical information about the products, as well as to make recommendations as to which products they should use. (*Id.*)

Biomet alleges that Stryker's sales representatives, at Stryker's behest, abused the trust that healthcare professionals repose in them by making harmful misrepresentations about one of Biomet's products – Palacos® Bone Cement ("Palacos"). (*Id.* at 17-38.) Specifically, Biomet alleges that Stryker's sales representatives told customers around the country that Palacos contains peanut oil with allergenic properties.

Palacos is an acrylic cement-like substance which is used to fix orthopedic implants in

2

place. (*Id.* at 10.) Though Biomet has only sold Palacos for the past three years, Palacos has been sold throughout the United States since 1967. (*Id.* at ¶¶ 10, 14.) Unlike other bone cements, Palacos is green is color. The green color enables physicians to identify the area of the surgery when cleaning or performing revisions. (*Id.* at ¶ 11.) Palacos's green color is due to its containing chlorophyll. (*Id.*) The chlorophyll in Palacos contains a trace amount of refined peanut oil, necessary as a solvent for the chlorophyll. (*Id.* at ¶ 12.) Biomet contends that refined peanut oil does not exhibit the same allergenic properties as "crude" or "cold-pressed" peanut oil, and no reported incidents of an allergic reaction to the refined peanut oil in Palacos have occurred. (*Id.* at ¶¶ 12-13.)

Biomet alleges that, beginning in 2002, Stryker engaged in a campaign to disseminate false information about Palacos, in order to bolster the market position of its own bone cement, Surgical Simplex P. (*Id.* at ¶¶ 15, 17.) Specifically, Stryker distributed a memorandum to its sale force that stated that the peanut oil in Palacos could cause, and had caused, allergic reactions in patients, and encouraged its representatives to discuss the danger with their customers and to "use [the] information to help ensure Simplex P Bone Cement remains the number one cement on the market." (*Id.* at ¶ 17; Exh. A & B.) Throughout the summer and early fall of 2002, Stryker representatives around the country relayed the misinformation to their customers at four different hospital – one in Fairfax, Virginia; one in Raleigh, North Carolina; one in San Diego, California; and one in Findlay, Ohio. (*Id.* at ¶¶ 20, 22-25.) In addition, Biomet alleges that a Stryker sales representative relayed the misinformation to a sales representative for Biomet's independent distributor, T.L. Weiss & Associates, in Chicago, Illinois. (*Id.* at ¶ 21.)

Biomet became aware of Stryker's misrepresentations regarding Palacos in September of

2002, and attempted to persuade Stryker to stop disseminating the misinformation and to provide a retraction. (*Id.* at ¶ 26.) Stryker agreed to do so, but some of its sales representatives continued to tell their customers that Palacos had allergenic properties. (*Id.* at ¶¶ 28-36.) Over the next year, Biomet alleges that Stryker's sales representatives misinformed customers from six more hospitals – one in Canton, Ohio; one in St. Louis, Missouri; one in Lubbock, Texas; one in an unspecified city in Ohio; one in an unspecified city in Maryland; and one in Sacramento, California. (*Id.*) Biomet alleges that Stryker's campaign of misinformation resulted in a decline in sales of Biomet bone cement and disrupted Biomet's existing and prospective business relationships. (*Id.* at ¶ 39.)

## ANALYSIS

### I. Legal Standard

Assuming that venue is proper in a federal district court, "for the convenience of parties and witnesses, [and] in the interest of justice, [that] district court may transfer the civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer is appropriate where the moving party demonstrates that (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). The movant bears the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). In assessing a motion to transfer, the Court must consider the statutory factors in light of all of the circumstances of the case. *Id.* at 219. The weight accorded to each factor is committed to the

4

sound discretion of the Court. *Id.*

## II. Venue Is Appropriate in Both the Transferee and Transferor Districts

When jurisdiction is not founded solely on diversity of citizenship, as is the case here, then venue is appropriate in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391. For purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.*

Here, venue is proper in both the Northern District of Illinois and the District of New Jersey because both courts have personal jurisdiction over Defendant Stryker. Stryker is a corporation that is incorporated in New Jersey and does business in Illinois. New Jersey's long-arm statute provides for personal jurisdiction co-extensive with the limits of federal due process, and Illinois's long-arm statute authorizes general jurisdiction over corporations that do business in Illinois on a regular basis. *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir. 1998); *Asset Allocation and Management Co. v. Western Employees Ins. Co.*, 892 F.2d 566, 570 (7th Cir.1989). Since the exercise of personal jurisdiction in either district does not violate federal due process principles, both courts have personal jurisdiction over Stryker. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) ("[G]eneral jurisdiction . . . is permitted . . . where the defendant has 'continuous and systematic general business contacts' with the forum.") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Because both courts have personal jurisdiction over Stryker, it is a resident of both the transferor and transferee district for purposes of the venue statute. Venue is therefore appropriate in both districts.

## III. The District of New Jersey is Clearly More Convenient a Forum Than the Northern District of Illinois

In analyzing the third prong of Section 1404(a), this Court must examine factors relating to both convenience and the interests of justice. "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion" of the court. *Coffey*, 796 F.2d at 219-20. Transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for another party. *Vandeveld*, 877 F. Supp. at 1167. Stryker "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" than the transferor court. *Coffey*, 769 F.2d at 919-20. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Rarely, however, is not never." *In re National Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (citations omitted). Here, Plaintiff's initial choice of forum bears so little relation to the case that transfer is proper.

### A. The Convenience Analysis

Five factors bear on the convenience analysis: (1) the plaintiff's choice of forum, (2) the locations of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). Here, the "locations of the material events," "relative ease of access to sources of proof" and "convenience of the parties" factors weigh in favor of a transfer to the District of New Jersey, while the other factors are neutral.

#### 1. Plaintiff's Choice of Forum

Normally, a plaintiff's choice of forum is entitled to "substantial deference." *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999). While plaintiff's choice of forum is an

6

important consideration in deciding whether a motion for transfer should be granted, it is not absolute and will not defeat a well-founded motion to transfer. *Id.* When the forum that the plaintiff chooses is not its home forum and does not possess any significant contact with the material events giving rise to the litigation, the plaintiff's choice is entitled to less deference. *Id.* Here, Plaintiff is an Indiana corporation with its principal place of business in Warsaw, Indiana. The Northern District of Illinois is therefore not its home forum, and Biomet's choice is entitled to less deference than it normally would be due.

### 2. The Locations of Material Events

Neither is the Northern District of Illinois the location of events material to this litigation. "[W]here the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, the plaintiff's preference has minimal value." *Dunn v. Soo Line R.R.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994) (citations omitted). None of the conduct that gives rise to Biomet's complaint took place in Illinois. Essentially, Biomet's claims are that Stryker damaged competition in the medical supply business and injured Biomet by disseminating misinformation about Palacos to Biomet's existing and potential customers at hospitals throughout the country. None of these customers were located in Illinois.

Biomet argues that the incident where a Stryker sales representative relayed misinformation about Palacos to a sales representative for Biomet's independent distributor in Chicago constitutes a "material event" for purposes of the venue analysis, because spreading of misinformation is "exactly th[e] type of conduct from which Biomet's claims arise." (R.12-1, Pl. Memo. In Opp. to Mot. to Dimiss & Transfer Venue, at 10). Material events, though, are those that give rise to the cause of action. *Dunn*, 864 F. Supp. at 65; *Von Holdt v. Husky Injection*

7

*Molding Systems, Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995) ("[T]he weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with *the operative facts giving rise to the claim*.") (emphasis added). Since Biomet's claims are founded on the dissemination of misinformation to Biomet's existing and potential customers, Stryker's contact with Biomet's own agent did not give rise to any of its claims. It may have been exactly the *type* of conduct from which Biomet's claims arose, but it was not the *actual* conduct from which Biomet's claims arose. Therefore, it is not a material event for purposes of the venue analysis.

By contrast, New Jersey is the site of an event central to Biomet's claim – Stryker's production and distribution of the original memorandum asking its sales representatives to discuss the supposedly allergenic properties of Palacos with their customers. *See Santa's Best Craft, LLC v. Janning*, 2003 WL 811653, at *3 (N.D. Ill. Jun. 30, 2003) (holding that district where defendant was located and wrote commercially defamatory letters was "the central situs of material events"). Therefore, the second factor weighs strongly in favor of transfer to the District of New Jersey.

### 3. Relative Ease of Access to Sources of Proof

Biomet argues that the third factor – relative ease of access to sources of proof – weighs against transfer because Chicago is a convenient drive from Biomet's corporate headquarters in Warsaw, Indiana, where Biomet maintains its documents and other tangible evidence relating to the events at issue. Stryker answers that any documents it possesses relating to the litigation are located at its New Jersey headquarters, so the District of New Jersey would be a more convenient forum.

8

The Court will not speculate as to which party will have a higher volume of relevant evidence. It also assumes that the parties would be equally inconvenienced, however moderately, by having to transport their documents to a distant forum. Biomet, however, appears to exaggerate the convenience of the Chicago forum relative to its Warsaw, Indiana headquarters. The Court takes judicial notice of the fact that Chicago is approximately 120 miles from Warsaw, Indiana, while Allendale, New Jersey – home to Stryker's headquarters – is approximately 25 miles from Newark, one site of the United States District Court for the District of New Jersey. *See* www.mapquest.com; http://pacer.njd.uscourts.gov/. In terms of transporting documents, Newark is at least slightly more convenient for Stryker than Chicago is for Biomet. Furthermore, both parties maintain corporate offices in New Jersey, while neither have offices in Chicago. The third factor, then, weakly favors transfer to the District of New Jersey.

### 4. Convenience of the Parties

Assessing the convenience of the parties factor requires consideration of "their respective residences and abilities to bear the expense of trial in a particular forum." *Von Holdt*, 887 F. Supp. at 188. Stryker argues that the District of New Jersey would be a less costly forum given that both companies maintain offices there. By contrast, neither company maintains an office in Chicago. Biomet does not specifically address this factor.

This Court finds Stryker's argument persuasive. While neither party has alleged that conducting litigation in either forum would be prohibitively expensive, "it is axiomatic that litigating outside of one's home forum is always more burdensome than litigating at home." *Clearclad Coatings, Inc. v. Xontal, Ltd.*, 1999 WL 652030, at *11 (N.D. Ill. Aug. 20, 1999). In this case, neither corporation's home forum is the Northern District of Illinois. Transfer to the

9

District of New Jersey would allow at least Stryker to litigate from its home forum, while also allowing Biomet to litigate in a district where it maintains a corporate office.

5.   **Convenience of the Witnesses**

In evaluating the convenience of the witnesses, the Court considers "the availability of compulsory process for the attendance of unwilling witnesses and the costs of obtaining the attendance of the witnesses." *Von Holdt*, 887 F. Supp. at 188. This factor is often viewed as the most important in the transfer balance. *Tingstol v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998). The convenience of witnesses who are within a party's control is far less important than the convenience of non-party witnesses. *International Truck and Engine Corp. v. Dow-Hammond Trucks Co.*, 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002) ("Because these witnesses are within plaintiffs' control, however, the court is not persuaded that the convenience of these witnesses favors the plaintiffs."); *Confederation Des Brasseries De Belgique v. Coors Brewing Co.*, 2000 WL 88847, *5 (N.D. Ill. Jan. 20, 2000) ("The location of the parties' executives and employees is irrelevant on the issue of witness convenience. It is presumed that a party's employees will appear as witnesses voluntarily.").

Biomet argues that this factor favors keeping this action in the Northern District of Illinois, because it expects that an unspecified number of presumably non-party witnesses who will testify about Palacos and the falsity of statements made by Stryker are located in Indiana.[1]

---

[1] Biomet also argues that the presence in Indiana of its employees whom it expects will testify militates against transfer, while simultaneously criticizing Stryker's similar argument through reference to case law holding that the convenience of party witnesses is unimportant. *See International Truck and Engine Corp.*, 221 F. Supp. at 904. Biomet thus refutes its own argument.

10

Biomet's failure to identify its expected witnesses with more particularity undercuts the strength of its argument. *See Prime Leasing, Inc. v. Western Digital Corp.*, 1992 WL 7435, at *2 (N.D. Ill. Jan. 15, 1992) ("Western Digital's failure to identify its own purported witnesses and the nature of their testimony deprives the court of the opportunity to properly weigh the merits of Western Digital's assertions regarding its California-based witnesses."). In any case, there is no basis to conclude that these non-party witnesses would be any more subject to compulsory process in the Northern District of Illinois than in the District of New Jersey. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (noting that subpoena power confined to 100-mile radius).

Biomet also argues that the convenience of the medical professionals to whom Stryker employees allegedly conveyed misinformation about Palacos militates against transfer. As an initial point, none of these witnesses appear to live within one hundred miles of Chicago, so it seems that none would be amenable to compulsory process issued by this Court.

Neither is the Court persuaded that either venue would be a significantly more convenient travel destination for the medical professionals. In its complaint, Biomet identifies ten hospitals where Stryker's sales force allegedly made inaccurate representations about Palacos to its customers. Four of these hospitals are in the Midwest, with three in Ohio and one in Missouri. Three of the hospitals are on the East Coast, with one in Virginia, one in North Carolina, and one in Maryland. California is the home to two of them and one is located in Texas. Biomet argues that Chicago's central geographic location makes it the more convenient forum, especially for the non-party witnesses located in California and Texas, for whom travel to New Jersey would be "terribly burdensome and costly." (R.12-1, Pl. Memo. In Opp. to Mot. to Dismiss & Transfer, at

11.)

The Court is not convinced that the non-party witnesses scattered nationwide would be significantly more burdened by being asked to testify in New Jersey rather than in Illinois. In either case, it is likely that the witnesses will have to travel by airplane. *See Kempf v. Mitshui Plastics*, 1996 WL 31179, at *3 (N.D. Ill. Jan. 25, 1996) ("Kempf's witnesses would be inconvenienced in any event for having to travel to the Northern District of Illinois, most likely by airplane--the same manner of travel the witnesses will take to New York state."). *See also Prime Leasing*, 1992 WL 7435, at * 2 (finding that a witness based in Colorado would have to travel a significant distance whether the case was litigated in the Southern District of California or the Northern District of Illinois). Even assuming that a slightly longer plane trip constitutes a noticeable inconvenience, witnesses from the three East Coast hospitals would find New Jersey a more convenient destination than Chicago. Accordingly, the convenience of the witnesses does not weigh significantly for or against transfer.

B. **Interests of Justice**

The "interests of justice" analysis relates to the efficient functioning of the courts, not the merits of the underlying dispute. *Coffey*, 796 F.2d at 221. The "interests of justice" may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. *Id.* at 220. Factors traditionally considered in this analysis include the congestions of the respective court dockets and the prospects for a speedy trial, the relationship of the community to the issue of the litigation, and the court's familiarity with the applicable law. *International Truck and Engine Corp.*, 221 F. Supp. 2d at 898. Here, the "interests of justice" analysis yields neutral results.

12

Biomet argues that transfer is inappropriate because it will receive a speedier trial in the Northern District of Illinois than in the District of New Jersey. The 2002 Federal Court Management Statistics reveal a negligible difference in the congestion of the two courts' dockets. In the District of New Jersey, the median time from case filing to disposition is approximately 7 months, and from filing to trial is 29 months. In the Northern District of Illinois, the median time from case filing to disposition is 5 months, and from filing to trial is 25 months. The difference of 2 months in time from case filing to disposition, and 4 months from filing to trial, is not significant. *See Santa's Best Craft*, 2003 WL 21504522, at *4 (finding a 3-month difference in time from filing to trial insignificant); *Colida v. Kyocera Wireless Corp.*, 2003 WL 1741396, at *3 (N.D. Ill. Apr. 1, 2003) (finding a 2-month difference in time from filing to trial insignificant).

Neither Stryker nor Biomet address the other two "interests of justice" factors – the relationship of the community to the issue of the litigation and the courts' familiarity with the applicable law. Both are largely neutral. In terms of the relationship of the communities with the issue of litigation, the District of New Jersey has an edge because Stryker is located there, and because none of the complained-of acts took place in the Northern District of Illinois. *See Colida*, 2003 WL 1741396, at *3 (finding that defendant's home forum had a stronger relationship to action, even when torts committed in both the transferor and transferee forum). *But see Santa's Best Craft*, 2003 WL 21504522, at *4 (holding that "community interest" factor neutral where plaintiff's allegedly defamed products sold nationwide).

In terms of the courts' familiarity with the applicable law, it appears that neither forum has an edge. Three of Biomet's eight claims sound in federal statutory law, which either court is equally able to apply. The remaining claims arise under common law and the Uniform Deceptive

13

Trade Practices Act claims. Neither party has analyzed which state's laws will apply to these claims. Accordingly, the Court declines to undertake a definitive analysis. *Id.*; *see also Law Bulletin Publishing Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1020 (N.D. Ill. 1998) (declining to analyze choice of law issue for purposes of motion to transfer when issue not adequately briefed by parties).

Whichever law applies, though, it is quite unlikely to be Illinois law. Illinois's choice-of-law rules mandate that, in tort cases, courts apply the law of the state with the "most significant relationship" to the complained-of occurrence and the parties involved in the action. *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990). "Generally, in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred." *Id.* Given that Biomet is based in Indiana, and that none of the conduct on which Biomet's claims are based took place in Illinois, it is highly unlikely that Illinois law will apply to any of Biomet's claims. Indeed, there is a higher probability that New Jersey's law would be applicable. The "interests of justice" analysis therefore does not weigh for or against transfer.

C.  **Balancing the Factors**

Venue is proper in the Northern District of Illinois, and venue and jurisdiction are both proper in the District of New Jersey. While the interests of justice analysis does not point strongly toward either forum, the convenience factors weigh heavily in favor of a transfer to the District of New Jersey. New Jersey is, unlike Illinois, a site of material events in the lawsuit and a more convenient–and altogether more logical–forum for the parties to litigate the case in than Chicago. Indeed, it seems that the only reason that Biomet chose to file suit in the Northern

14

District of Illinois, other than its rough geographical proximity to Biomet's headquarters, is that Biomet's counsel live here. Accordingly, Biomet's choice of venue is not entitled to any great deference. *See F&G Scrolling Mouse, LLC v. Microsoft, Inc.*, 56 F. Supp. 2d 1005, 1007 (N.D. Ill. 1999) (finding that plaintiff's choice of forum is of "minimal value" where plaintiff's counsel constitute its most significant connection to forum). Stryker has carried its burden of showing that the District of New Jersey is clearly more convenient than this Court.

## IV. Biomet Has Waived Its Request To Transfer the Case to the Northern District of Indiana

Perhaps realizing that its argument against transfer rested on shaky grounds, Biomet requested in its response memorandum that the Court transfer the case to the Northern District of Indiana if it deems transfer appropriate. (R.12-1, Ps. Opp. to Mot. to Dismiss & Transfer, at 14). Biomet made this cursory argument in one short sentence without providing any substantive argument. Accordingly, Biomet has waived it. *See Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 n. 6 (7th Cir.2002) ("Perfunctory and undeveloped arguments are waived...").

15

## CONCLUSION

For the foregoing reasons, Stryker's motion to transfer is granted. This action is transferred to the District of New Jersey, and Stryker's motion to dismiss is preserved for adjudication by that court.

Dated: April 8, 2004

ENTERED

AMY J. ST. EVE
United States District Judge